BRUNSWICK–BALKE–COLLENDER CO. v. H. WAGNER & ADLER CO.

(Circuit Court, S. D. New York. May 3, 1907.)

No. 8,793.

PATENTS—INFRINGEMENT—POOL TABLES.

   The Cunningham patents, Nos. 553,185 and 556,532, the former relating to the construction of a pocket for pool tables having return conduits for balls, and the latter to the conduit, if conceded invention, *held* not infringed. No. 559,790 to the same inventor, also relating to pockets, is void for lack of invention.

In Equity. On final hearing.

Philipp, Sawyer, Rice & Kennedy (James Q. Rice, of counsel), for complainant.

Dickerson, Brown, Raegener & Binney (S. L. Moody, of counsel), for defendant.

PLATT, District Judge.   This is a bill in equity, based upon three patents, mentioned later; the improvements therein claimed being capable of conjoint use upon a single pool table, and the usual remedies are demanded.   The only claim of patent in suit 553,185 is:

"In a pool table having ball troughs, or alleyways, for conducting the holed, or pocketed, balls from the vicinities of the pockets to a receptacle beneath the table, a ball receptacle comprising an outer dish-shaped portion, to receive the ball, and an inward, gutter-shaped extension fitting within the outer end portion of the alleyway of the table; said ball receptacle being securely fastened to the woodwork of the table, without fitting, or securement, to the exterior surface of the table body."

The defense to this claim is that the patent is void for want of invention, and, if valid at all, must be so limited that defendant's device does not infringe.   We find nine patents in the prior art showing various constructions of pool tables of the bottomless pocket, concealed conduit, type.   Complainant's expert, after discussing them, admits that pool tables of that general character are old, and, further, that the combination of (1) "the table body"; (2) "the ball conduit thereof"; (3) "the usual pocket iron"; and (4) "a ball receiver, or ball receptacle, having dish-shaped or cup-shaped portion to receive the ball and deflect it toward the alleyways or conduits"—is old.

This being so, did it involve invention at the date of the application for the patent in suit to disclose an "inward, gutter-shaped extension fitting within the outer end portion of the alleyway of the table," and a way to dispose of the ball receptacle so that it might be "securely fastened to the woodwork of the table, without fitting, or securement, to the exterior surface of the table body"?   As long ago as April, 1878, Boyle, in No. 203,108, had a vague notion of the advantage to be found by making the pockets on a pool table bottomless, so that the balls might be conveyed in conduits under the table to a general receptacle; but he did not explain how to connect the pocket with the concealed conduit, nor how to convey the balls properly in the conduit. Three years later, Jefferson, in No. 239,508, studied the same problem. He showed conductors leading from each pocket to a central conductor, which in turn leads to a general receptacle.   He saw that the ordinary net pocket of Boyle must shake about when a ball was driven into it, and so undertook to correct that by offering "K," which is a slanted sole-leather attachment, with strips to be buttoned on to the netting at such a point that the ball would be guided by the leather into the conduit.   Brunswick, No. 324,004, August 11, 1885, took an appreciable step forward.   He was the first to realize that to produce a successful concealed conduit system for pool tables, it was essential to provide a means for reliably and accurately insuring the delivery of the balls from the table into the conduits.   Using the ordinary table and pocket iron, he fastened to the pocket iron a pocket of soft or yielding material, preferably of leather or worsted netting.   This was extended down and made fast to a metal cup, which was screwed onto the exterior of the table.   This cup is so arranged that it is in alignment with and connected to the alleyway or conduit.

In this state of affairs Cunningham came upon the scene, asking for the patent in suit.   He avoided marring the exterior surface of the

table by putting the metal cup of Brunswick below the pocket and inside the table. Jefferson had shown a sole-leather attachment, "K," used to guide the ball to the conduit, and located inside the table. It was not too "cup-shaped," it is true; but it curved like a cup in one direction, and it is admitted that it had a tendency, at least, to curve in the other direction. With Jefferson's suggestion before him, it was easy to find in Brunswick's device the cup-shaped part of his construction, and the gutter-shaped extension into the conduit is obvious therefrom. With his first patent in mind, Cunningham shortly proceeded to apply for his second patent, No. 559,790, dated May 5, 1896, of which claims 1 and 3 are in issue:

"1. In that species of pocket table provided with ball conduits, or concealed alleyways, the combination, with the table body, the ball conduit thereof, and the usual pocket iron, of a ball receiver and guide, which communicates, at its inner portion, with said ball conduit, and the outer upper portion, f, of which is curved upwardly toward and near to the pocket iron and is securely fastened at its upper edge to the depending portion of the leather covering of said iron, all substantially as and for the purposes set forth."

"3. In combination with the table body, the ball conduit thereof, and the usual pocket iron, a ball receiving and guiding device having a cup-shaped outer portion, f, extending up toward and fastened to the pocket iron, or its covering material, and composed of thick leather, molded or formed into the requisite shape, as and for the purpose set forth."

The first patent described a cup-shaped receiver with a series of perforations "for the attachment thereto of the leather of the pocket iron * * * in about the usual manner." It might have been either of metal or leather, and the third claim of this patent only differs from the first by calling for leather. The only substantial difference, therefore, between the two patents, is that in the one now under consideration the cup-shaped device is carried up nearer to the pocket iron. With the entire prior art before him, he cannot well be credited with invention for such a suggestion as that. The more one studies these two patents, the less he finds in them. A simple statement of what the patentee had done would have exposed their sterility. It is true that the greatest simplicity may embody the highest inventive thought; but one finds no such thing here. The second is void for lack of invention, and the first has, at best, so little merit that the defendant escapes infringement.

So much for the pockets and their connection with the conduits. Now as to the conduits themselves. The third patent in suit touches that matter. It is No. 556,532, dated March 17, 1896. The claims as finally allowed and now at issue are:

"1. The wooden ball trough for pool tables, provided with the rabbets, e, and with strips, C, C, of elastic material, such as is described, secured in the rabbets so that the ball will travel only on their upper and inner edges, as and for the purpose set forth.

"2. The wooden ball trough for pool tables, comprising the pieces, A, A, and b, b, provided with rabbets, e, in the pieces, A, A, and with the strips, C, C, of elastic material, such as is described, secured in the rabbets so that the ball will travel along their upper and inner edges, as and for the purpose set forth."

To construe them fairly we must glance at the prior art, and at the proceedings in the Patent Office. When an ivory ball rolls down a

wooden trough located within a pool table it naturally makes a noise, and this would not please the player at the game. Jefferson and Reingardt thought of that, and sought to avoid the trouble by lining the troughs with cloth or rubber. Augustine, No. 472,423, April 5, 1892, had a track with parallel ribs upon which the balls rolled, thus reducing friction; but the entire track was covered with leather or other suitable material to diminish noise. (See page 3, lines 42–45, specification.) Goss, No. 507,900, October 31, 1893, had a conduit which he called a "table chute." It was composed of several parallel wires or rods covered with soft rubber to prevent injuring the balls, and so arranged as to form a circular wire cage in which the balls were carried along. Noise would be thereby materially diminished, of course; but the patentee says nothing about that feature of his construction. Roberts, 425,551, April 15, 1890, suggested a means of getting the balls on a bowling alley back to the player by using what he called a "noiseless bowling crease." The crease upon which the ball is delivered by the player is covered with cork or linoleum, and this covering seems to extend over and be applied to the "slanting channel" in which the ball comes back to the player.

The use of skids upon which barrels are rolled in and out between truck and warehouse is well understood by everybody. This, and more, being the case, Mr. Cunningham went to the Patent Office. He attempted to claim a conduit with an open bottom (old in Ryan patent, 249,679, November 15, 1881), provided with two parallel ways, or skids, of rubber, or other noiseless material, upon which the balls should travel. He did not specify just how the balls should roll on the skids or how the skids should be attached to the conduits. He wanted the full benefit of the skid construction, so long as he kept the balls "wholly" thereon. He was rejected, and at once renewed his attack. This time, instead of asking for the entire skids, he limited their use so that "the ball must travel on the angular portions or edges thereof," but was again rejected. He appealed to the board, who affirmed the examiner, but suggested the present claims, which were allowed. These claims limit him specifically to rabbets in which to secure his skids. He does not monopolize the right to secure them in grooves near the edges. He must come out to the very edge and use the well-understood rabbet device to obtain securement. In this apparent advance in the art there is really no advance at all.

His argument in support of his right to avail himself of the angular portions or edges of the skids to support the balls was rather persuasive, and may have merited a better fate at the hands of the Patent Office; but the trouble seems to have been that the patentee was in great straits. While the contest proceeded his employer (the complainant herein) was making his conduits, and they wanted to stamp the patent mark thereon as a warning to trespassers; and so he appears to have abandoned all chance of impressing the office with the merit of his request. He deliberately threw away the substance and caught at a shadow.

We need not waste words about the commercial success of the combined patents, nor upon infringement. In August, 1896, Cunningham applied for patent No. 573,262, which issued December 15, 1896.

This is not in suit, but was applied to complainant's tables, and presumably accounts in large measure for the increased popularity of complainant's open pocket, concealed conduit, pool tables.

Defendant's construction is concededly in accordance with patent to Charles Fisher, No. 690,052, dated Dec. 31, 1901. The Patent Office, which was astute in finding novelty and invention in the patents in suit, retained its cunning, so as to find the same qualities in Fisher's conception. If anticipation could not be found by the careful searchers when Fisher asked a boon, it is not worth while to ask the court, with its notions of all the patents, to discover infringement.

From every conceivable standpoint one is forced to the conclusion that the bill must be dismissed, with costs. It is so ordered.